Our third argument of this morning is Appeal No. 222560, Eddlemon v. Bradley University. Mr. Ostfeld, good morning. Good morning, Your Honor. May it please the Court, Greg Ostfeld on behalf of Bradley University. We respectfully submit that the District Court abused its discretion because it did not undertake a rigorous analysis when it certified the tuition and activity fee classes at issue in this case. Had it done so, the District Court could not have certified either class because plaintiffs have not met and cannot meet their burden of proof under Rule 23 as to either class on the record submitted. I'd like to focus today on three specific errors by the District Court. First, it did not consider the substantive elements of plaintiffs' claims under Illinois law. Second, it did not assess the record with respect to any disputed factual issues material to class certification. And third, it did not evaluate plaintiffs' damages models. Beginning with the substantive elements, that is the starting point of any class certification analysis under this Court's ruling in Santiago and many other decisions. Assessing the substantive elements provides the framework for the class certification analysis. It enables the District Court to circumscribe the claims, to separate the common issues from the individual issues, to determine whether there are any common issues central to the validity of plaintiffs' claims, and if so, whether those common issues predominate. The District Court respectfully did not do that. What it did instead, specifically for breach of contract, was it found that it need not delve into plaintiffs' ability to prove the contractual terms, and instead it went straight to the alleged common injury being sufficient to support class certification based on the District Court's erroneous reliance on the flawed District of Arizona opinion in the Little case. With respect to unjust enrichment, the District Court deemed all arguments more closely related to the merits, and therefore never reached the elements of the claim. We respectfully submit this was error. With respect to commonality, it was error under Walmart v. Dukes, which required the validity of the claims and apt to drive the resolution, and whether those issues are answerable on a class-wide basis. With respect to predominance, it didn't follow the Amgen precedent, which required the Court to determine whether those common issues, if they exist, would enable the claims to prevail or fall in unison. Here for the breach of contract claim, the central issues to the validity of the case are exactly the issues the District Court declined to examine, the contractual terms, and in particular, whether plaintiffs' alleged promises of 15 weeks of classes and 15 weeks of on-campus activities are provable on a class-wide basis. This is not a pro forma inquiry. This Court made clear in the Gossamond v. Loyola University case, where it examined similar claims, that the plaintiff is required to provide evidence of the specific source of the contractual promise asserted and the exact promises made. That aligns with Illinois law, which requires the promise between a university and its student to be concrete and definite, not something that can evaporate or be subject to revision after contract formation. Assume we agree with you that the District Court erred and didn't consider the elements, didn't engage in a rigorous analysis, as the Supreme Court has said you must. Why shouldn't this be sent back for the District Court to determine whether or not class-wide evidence could be established with that contract for the tuition class? It seems like that evidence, and I don't think you're disputing that that is a piece of evidence or was before the Court the first time around. Why wouldn't that evidence be sufficient to establish the contract? I understand you've argued, go ahead, I'll let you answer that. In a word, Your Honor, the reason not to send it back down is efficiency. You have the entire class certification record before this Court, and I think, Judge St. Eve, that you've identified the issue, which is on the record presented. Would it be possible for the District Court to certify a class based on the record presented? We respectfully submit that it is not possible. Mr. Oswald, I have a similar question, though. If your position is correct that the District Court's analysis was just way far afield, it just did not engage with the legal framework that is required to assess class certification, isn't the proper step just to send it back and say, this is the framework, you've got to engage with the claims and the elements of the claims, and you can be informed by what's in the summary judgment record right now with respect to both commonality and predominance? You know, give it a shot. Your Honor, I think that would be the appropriate measure if there were evidence  but here there is not. Plaintiff's record is complete. This was done after summary judgment. This motion for class certification was presented on a paper record. Nobody sought an evidentiary hearing from the District Court, so we're dealing with a paper record and a very finite paper record. Plaintiffs made a strategic choice to submit on a very, very confined record. So I think... So on that record, why wouldn't the academic calendar, which is the basis of their contract that says we're going to have 15 weeks of classes, why wouldn't that be sufficient to establish a common question and predominance? Because the academic calendar is just that. It is a calendar that states on its face that it is subject to revision. Why isn't it, and I agree, there's that caveat, why isn't that a merits question, though, as opposed to a proof for class certification? Because I hear what you're saying is that academic calendar can't serve as the basis for an applied contract because there's a caveat that says we can change it at any point. That sounds like a merits argument. Well, it could be, but at the class certification stage, the question is, is there evidence that would enable that question to be answered on a class-wide basis? And there is nothing in the record to suggest that on a class-wide basis it is possible to answer from the calendar whether the students were promised 15 weeks of classes, which is the question central to the tuition. Well, no, sure there is, and you just say the plaintiff's only evidence, Your Honor, is this academic calendar, which by its term says it's subject to change. There's no way that satisfies the requirement under Illinois law of the promise being concrete and definite, and we win. I mean, we're going to win on a class-wide basis, but that's precisely the way they're trying to prove it on a class-wide basis, and the analysis is the same across all putative class members. Well, except that's not plaintiff's only evidence, Your Honor. Plaintiff at his deposition, and again in his opposition to summary judgment, pointed to additional evidence that was individualized. He said if you have to look to the course syllabi, and if you look to the course syllabi, and if you specifically look to things like Monday, Wednesday, Friday schedule, if you look to individual terms within the course syllabi, that's how you get to my promise of 15 weeks of classes. That is obviously very individualized evidence. You have the plaintiff saying with respect to the class, we're just going to look at the academic calendar, but for me, to stave off summary judgment, you're going to look to the course syllabi. So one of the interesting thought exercises that needs to be undertaken at class certification is what does a trial of this case look like? What plaintiffs have submitted is that the trial is going to look like submitting an academic calendar to the jury as to the class's claims, which doesn't provide them with an answer one way or the other, because plaintiff acknowledged that the subject to revision language means the university can revise the calendar to a certain extent, and he also testified that on his individual experience, some professors did revise their calendars. They canceled classes and didn't reschedule them, and as to him, he didn't call those reschedulings a violation of his contract. So you've got plaintiff pointing to individualized evidence to assess what they are posing as a common and class-wide question. I would respectfully submit on this record, on the record plaintiff submitted and on the record we submitted to the district court, it's not possible to get to a situation where you can say that these claims rise or fall in unison, because plaintiff himself is saying my claim doesn't rise or fall in unison with the class. For my claim, you have to look at my course syllabi. You have to look at my individual experience with my professors. Is he saying you have to look at, or this is additional evidence? I read the argument as saying the academic calendar applies to all students. It was represented to all students. It says 15 weeks of class. Those in the class only got 14 weeks, and you can use this academic calendar to prove the commonality in its evidence or its proof of preponderance, that alone. I think that was plaintiff's argument. The problem was he presented no evidence to indicate that that would present proof on a class-wide basis. And when pressed on the issue, he then went to his individualized evidence. Isn't his evidence the academic calendar itself? I mean, what plaintiff's counsel said in argument was that's it. That's what we want to put to the jury is the academic calendar. So why isn't that sufficient? It's an academic calendar. It's something that was out there for all the students to see. It's the basis of this alleged promise of 15 weeks. The reason it's not is because a jury presented with this calendar is no closer to an answer to the class-wide question after reviewing it than before. You don't have a, excuse me, a concrete, definite promise as required by the law. That means the contract claim fails on its merits. What I would submit, Your Honor, it could mean that if there were no other evidence. But then you have plaintiffs submitting individualized evidence to say that's how you get to my contract, is you look to the course syllabi. You look to the professor's individual practices. So on this record, you're dealing with predominantly individualized evidence that's going to decide the question that's been presented as a class-wide question. I see that I'm into my rebuttal time. I just want to ask you a question about the, Mr. Osterfield, about the Student Activities Budget Review Committee. Yes. When you put that together with the catalog, doesn't that give you a little bit more of a basis for breach? I don't think so, Your Honor. Plaintiffs put forward the Student Activities Budget Review Committee standards on the activity fee issue. The SABRC articles, plaintiff testified he'd never even heard of them before he became involved in this litigation. So I don't see how they could form part of his contractual expectations or any other student who hadn't seen them. But even if you accepted that they were part of the basis for a contract, the activity, the SABRC articles don't say anything about 15 weeks of on-campus activities. They don't say anything about on-campus activities. They talk about generalized goals. They don't form a specific or concrete promise as required by Bosch. And there's nothing in the catalog that supplements that to turn it into a promise of 15 weeks of on-campus activities. This isn't like the California case that plaintiff cites where the court looked at 1,500 textual references across the catalog to certify a class. There's simply nothing about on-campus activities that plaintiff has pointed to to sustain the activity fee class. It does speak to on-campus though, right? The SABRC articles? Yeah. I don't recall whether that language is in there at all. I do know that there are, it speaks to generalized goals. There's certainly nothing about 15 weeks of on-campus activities. I can, I'll consult the language of the articles. I guess during my next 12 to 15 minutes. Thank you. Thank you. Mr. Peterson, good morning. Good morning, Your Honor. May it please the court. My name is Matthew Peterson. I represent Orion Edelman and the certified classes. I'd like to continue the conversation about the evidence in the record with the hypothetical you gave about remanding back and just looking at the evidence in the record. If we look to what was produced in plaintiff's motion and what was submitted as supplemental evidence in the record, we have first the course catalog itself, which was Docket Entry 59. That's an over 900 page document, which covers everything from the grading policies to discipline. So before, I'm sorry, Mr. Peterson, I don't mean to throw you off track here, but before we get there, you're about to list evidence for us. The district court didn't engage with any of that evidence. And the Supreme Court in Walmart said very clearly that Rule 23 is not a pleading standard. That a court cannot just rely on allegations, that you have to address the evidence. Where in the court's ruling here did it engage with the evidence? So can, I'm going to read from the order here. Yep, tell me the page, please. Okay, page 13 in Docket Entry 64. Tell me about when. Yeah, I'm. Okay, so it's in the predominant section. It says here, plaintiff presents common questions as to whether defendant breaches contract with its students or was unjustly enriched by retaining full tuition payments despite providing 14 weeks of instruction in a 15 week semester. This is a question common to the class the plaintiff seeks to certify. I don't think this is an allegation because the sentence would have stopped at whether a defendant. He talks about common questions. And he talks about what the common question is. But I don't see any engagement with the evidence presented, even the academic calendar, which is your main piece of evidence. I would agree with you. He didn't cite to the actual evidence that was presented. But I think that he did the analysis. But how did he, how did he analyze the evidence if he doesn't even cite to it and just talks about pleading allegations? It seems like that is a direct contradiction to Walmart. Again, I agree that he didn't cite to any of the record evidence, but he was. He had all the evidence before I met the hearing that I don't doubt that they put the evidence and you made it clear in your argument to him what you were relying on. Yes, but the case law says that district courts have to conduct a rigorous analysis of the evidence. But you can't just rely on the pleadings. And I don't know how we can decide that the district court did that based on the opinion here. Right. Correct me if I'm wrong. Right, I agree that he didn't cite to any evidence in his order and that on remand that the actual record does have evidence that's capable of. Right, so it's not just that there's a lack of citations, right? I mean, your point is not a clerical point. It's also that there's no discussion of evidence. There's discussion of allegations. And so what you read from on page 13 is the court's conclusion, right? You read the conclusion. But when you go back to the reasoning that's building to the conclusion, it's all about what's been alleged. And in response to the university's contention that you have to go beyond allegations, the district court says, no, you don't. And the district court relies upon little over and over to say, you don't have to, as it says on page 8, delve into the ability to prove alleged contractual terms to satisfy commonality. What I wonder about is whether that statement reflects legal error, that those statements aren't defensible as a legal matter. I don't think you have to prove contracts terms at class certification. You just have to have common evidence capable of proving those terms at trial. And that's what the record evidence is. We know you can't. We know that a proper Rule 23 analysis is not focused on pleading alone. It's not akin to like what you do at 12b-6. But where did this analysis ever go beyond pleading? Not in terms of what, forget citations. Where in the substance of the analysis did it move beyond pleading? I agree with you. It didn't. Well, that's a problem. It's a legal problem. It doesn't mean that your classes can't be certified. But the appeal is that this is not a proper Rule 23 analysis. There's just no way to defend it as such. Right. It's not like Santiago, where they break it down and go through the elements. Or elevate up. Walmart? Right. The text of Rule 23 and. So do you. Hold on. If you're not disputing that, are you conceding error? I'm not conceding error. I believe that the district court considered the evidence that was presented and drafted his order under discretion that Rule 23 provides him to find that the class is certified. And is your best evidence of the court engaging in the rigorous analysis and considering the evidence and the evidence presented by Bradley of individual issues? What you pointed to on page 13. Right. And well, so back to my point of if this were to go back and only be ruled in the evidence in the record, we have the course catalog, which is over 900 pages. Did you present that to the court? Yes, it's mentioned. And it's in the record in Documentary 59 for certification. And it's Exhibit C. And it's over 900 pages. And for each section, so for plagiarism policies, for grading, for tuition, at the end of each section, it says, this is the contract between a student and Bradley. And does it say 15 weeks of class? Yeah, for the, well, that would be the. In the course catalog. Yeah, in the course catalog. So the academic calendar is part of the course catalog. And so that section at the bottom says, this is a contract between Bradley and the university. And it lists a start date for the semester and an end date. And it also includes a start date and end date for the spring break. So it's very specific about when the semester is to occur. And this is the same for all students. There's not multiple academic calendars in circulation or multiple course catalogs. This is common evidence. And it's a common question capable of proof at trial of whether even the comment about subject to revision, that's a common question of whether revision means, can you cancel it? Can you, do you have to make it up if you cancel it? Those are all common questions. Also, it's a common question as to whether the course catalog itself is the contract or whether the other evidence entered into the record amounts to the contract, such as the, we entered into the record, the student invoice, which shows the standard 17,100 tuition paid. Under Loyola, the case from last summer, Gochiman, this court said it's an implied contract. And so that's a possibility, too. It's a common question of whether that, showing the payment with the course catalog, if that amounts to it. All right, you guys, the court raised the issue of the course syllabi. And I wanted to, first and foremost, all the course syllabi by their nature are going to vary. There's an English class, math class. But they're all subject to the academic, same academic calendar, right? You don't have a course syllabi say this is a 20-week class when the contract itself. So they're all subject, and at most, they're individual issues that do not predominate over whether we have the document that says this is the contract, which shows a 15-week semester. To the activity fee class regarding the student activity budget review committee articles that was mentioned, that, again, we entered into the record about on-campus activities. There's also mention of on-campus activities in the dances and all sorts of stuff in the course catalog itself. It says this is the contract between a student and the university. Mr. Peterson, are you arguing to us that we could do the analysis here from this record that the district court didn't do? Correct. I'm saying that everything's in the record that needs to be in the record regarding certification. So you're asking that analysis to actually make up for the deficiencies in the district court order? Correct. It could fill in the gaps into what was missing in the analysis because the evidence is there, and it's all common. Briefly, I want to touch on the damages model in my remaining time. Mr. Edelman presented a 115th damage model to account for. And Bradley, it's undisputed fact in their motion for summary judgment even that they only provided 14 of the 15 weeks. So the 115th refund of the standard, every student pays $17,100 for tuition. The 115th accounts for that. What about the argument that that doesn't take into account scholarships? So they may not have actually paid that amount. Well, first, in our class definition, payment would technically come from accounts for third-party payees, which would include scholarships as being a third-party payee. But under your hypothetical in our motion, or I mean on appeal, we showed how it is still capable. The invoices are itemized in a manner where it shows how payment is made, scholarship one, scholarship two, cash, credit card. How could you prove that by common proof, though? I'm not questioning whether or not you could prove it. But for class certification purposes, you have a simple model that says 115th is what they're entitled to. But Bradley has argued, because many students got scholarships, they didn't actually pay that amount. So they wouldn't be entitled to the 115th. Oh, you would deduct the scholarship. If that was going to be the model that the district court accepted, or the jury, you would deduct the scholarships. And it can be deducted. And I understand that. But how is that a common issue that predominates if you have to do these individual calculations? I think there's a lot of case law that talks about individual, minimal individual calculations such as that doesn't predominate over the common issue of whether there's a contract and standard form contract that applies to everyone. And it's a real simple calculation. You just deduct the tuition from the itemized scholarships. And that's really the way that that would be done in regards to the scholarships. I also wanted to mention, Bradley raised a windfall argument about third party payees, because their class definition includes not only payments from the students themselves, but on behalf of the students, like parents. And in Gochiemond v. Loyola, this court, in footnote one, affirmed the district court's dismissal of the parents in that case and said that they don't have Article III standing. And they cite to the Salerno v. Florida and Southern case, which elaborates on that and says that there's no benefit, there's no injury to the parents when they pay. That's an agreement between the parent and the student or whoever, however they collect the funds to pay. And here, I just want to make clear that there would be no windfall. The district court, in his order, said that the district court was correct. He said that parents, whoever, cousins who paid on behalf of students, the student's name is the only name on the invoice. And the invoice says, failure to pay, you're responsible for all collection costs and fees. So if student doesn't pay for one week of classes, he gets sued. But if, right, but now when Bradley doesn't provide one week, they say that, oh, wait, your aunt paid part of the tuition, so you can't collect. And that's just not right. For these reasons, I'd respectfully request that this court either,  notice that it deems lacking from the district court, or affirm the district court's order. Thank you. OK. Well, thank you, Mr. Peterson. Mr. Ospal, I think you had two and a half minutes. Thank you, Your Honor. Judge Flom, I'd like to begin by returning to your question and the question about what was in the SABRC articles. It doesn't reference on-campus events. It does refer to funds for campus-wide events and programs that benefit the student body as a whole. Those are expressed as goals in the SABRC articles. So my point about that would be essentially the same as the problem with the academic calendar, which is subject to revision. Under the Illinois Appellate Court's decision in Bosch, neither of those is definite enough nor concrete enough to present evidence of a promise from the university to the student. So it's not evidence of a promise at all. It's not class-wide evidence. It's not individual evidence. It simply doesn't inform the inquiry. And for that reason, yes. Mr. Ospal, then how can you concede or would you concede that there is an avenue for a contract to exist between an educational institution and an individual student? Because under your theory of flexibility, I guess you would say it's too ambiguous to have a contract basis. I wouldn't say that it's impossible to have a contract between a university and a student. It clearly is. The law clearly holds that that is the relationship between a university and a student. But it's not everything that you can conceive under the sun that becomes that contract. It is what are the exact promises that were made by the university to the student. And to discern that, as this court made clear in Gosamon, you look to a range of sources. You can look to the catalog. You can look to the regulations. You can look to the university's practices and customs. There are a lot of sources of evidence you can look to to identify that contract. But here we have a record. And it is a very discrete record. And it is the record that plaintiff chose to present. And one item we agree on entirely is everything this court needs to decide the issue of class certification is in the record. And I would say that it militantly indicates that this case was not suited for certification on this record presented. Are there cases where there could be a class-wide promise from a university to a student? Absolutely, those cases exist. Is this that case? Absolutely not, it is not that case, because the record doesn't present that evidence. And I think the measure of damages issue is one more indicator of that. There is no witness in the record who is prepared to testify to this measure of damages. There is no witness who is prepared to deduct out scholarships, amounts that weren't paid by the student, amounts that weren't gained by the university. There is simply nothing here to support class certification. And on that basis, we would ask that the district court be reversed and this be remanded with instructions to deny class certification. Thanks to both counsel. We'll take the appeal under advisement.